249 N.J. Super. 246 (1991)
592 A.2d 291
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
VINCENT ROSS, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted June 4, 1991.
Decided June 25, 1991.
*247 Before Judges PRESSLER, DEIGHAN and A.M. STEIN.
Wilfredo Caraballo, Public Defender, attorney for appellant (Vito Sciancalepore, Designated Counsel, on the letter brief).
Robert J. Del Tufo, Attorney General, attorney for respondent (Janet Flanagan, Deputy Attorney General, of counsel and on the letter brief).
The opinion of the court was delivered by PRESSLER, P.J.A.D.
Following a jury trial, defendant Vincent Ross was convicted of two counts of first-degree aggravated sexual assault, N.J.S.A. 2C:14-2a(1); two counts of fourth-degree endangering the welfare of a child, N.J.S.A. 2C:24-4; and one count of second-degree sexual assault, N.J.S.A. 2C:14-2b. He was sentenced to concurrent 15-year terms on the first-degree convictions, concurrent 9-month terms on the fourth-degree convictions and a concurrent 7-year term on the second-degree conviction. We reverse.
The alleged victim of these crimes was E.C., the then ten-year old daughter of the woman in whose home defendant's girlfriend was residing with her own two children and where defendant was therefore a frequent visitor. The incidents forming the basis of the indictment occurred over an approximate two-week period during the latter half of March 1987. According to the uncorroborated testimony of E.C., defendant during this period performed an act of sexual contact with her *248 while both were fully clothed and twice thereafter forced her to perform acts of fellatio. She did not tell anyone of these events until about two months later when she revealed them to her mother. Defendant, who testified in his own behalf, denied that these acts ever took place. The jury evidently, however, believed the victim.
The primary issue raised by defendant on appeal implicates the Rape Shield Law, N.J.S.A. 2C:14-7. The trial predated our decision in State v. Budis, 243 N.J. Super. 498, 580 A.2d 283 (App.Div.), certif. granted, ___ N.J. ___ (1990), and consequently no reference to the victim's prior sexual experiences was permitted into evidence.
The issue arose in this manner. During the course of her opening statement, the prosecutor suggested to the jury that the victim, by reason of her tender age, could not have had the knowledge to assert that defendant had abused her as she alleged he did unless the incidents had actually occurred.[1] During the course of his opening statement defendant attempted to overcome this suggested inference by telling the jury that in fact the victim did have such knowledge because she claimed to have been sexually abused twice before. The prosecutor immediately objected and the jury was excused.
During the course of the ensuing colloquy, defense counsel advised the trial judge that he had been provided during the course of discovery with a D.Y.F.S. report apparently made in connection with its investigation of these charges[2] and that the report stated that the victim claimed to have been sexually abused by one adult male relative when she was six years old *249 and by another adult male relative when she was eight years old. Insofar as we can determine from the record, the D.Y.F.S. report did not disclose whether these claims by the victim had been contemporaneously reported or followed up in any way either within the family or by social service or law enforcement agencies.
The trial judge conducted a Rule 8 hearing. The victim testified that those events had occurred and described them. The questioning did not cover the issue of her contemporaneous disclosure of these alleged events or any other surrounding circumstances or indeed anything else beyond her statement that the acts of abuse had taken place. Nor was the victim's mother, who later testified as a State witness, called as a witness during the Rule 8 hearing. At the close of the hearing, the court ruled that the Rape Shield Law precluded any reference to these prior claims. The jury was then recalled and the judge gave this instruction:
Ladies and gentlemen of the jury, before we start taking testimony, I just want to mention one thing. During one of the openings of counsel, reference was made to prior allegations by E.C. with regard to sexual abuse by others against her. That was incorrect, should not have been made, and you are to disregard it and strike it from your recollections.
The court then overruled defense counsel's objection to the use of the word "incorrect" to characterize the excluded references. Significantly, while the jury was instructed to disregard defense counsel's reference to prior sexual abuse of the victim by others, it was not told to disregard the statement of the prosecutor which had provoked the reference, namely, that the victim's naivete precluded her fabrication. The prejudice necessarily resultant from this failure of evenhandedness was compounded by the prosecutor's summation in which she urged the jury as follows:
I ask you if you think a 10 year old child could give you the detail you heard yesterday while making up the incident. Think back as to what she told you what happened, some of my questions, what she did. Could that 10 year old child that defense counsel tells you would not understand the significance of what she's doing if it were not true, she was making it up, didn't understand the significance of it to the defendant.

*250 Well, would that 10 year old child have the kind of detailed knowledge of what went on that you heard yesterday from the stand?
And later on, the prosecutor asserted that "There has been no suggestion of what reason the child would have to make up such a charge."
Aside from the Rape Shield Law issue, we are persuaded that the prosecutor's references to the child's naivete and lack of motive constituted plain error capable of producing an unjust result. Obviously the prosecutor was aware that the child's claims of prior sexual victimization, even though the prior acts were not as egregious as those alleged here, provided her with a degree of knowledge potentially belying her alleged naivete. For the prosecutor to have made that argument knowing it to be at least arguably contrary to facts which defendant was precluded from adducing was improper, unfair, and, in view of the paramountcy of the credibility issue, irremediably prejudicial. On that basis alone, defendant is entitled to a new trial.
The necessity of a retrial requires us to address the Rape-Shield Law issue. The Rape Shield Law protects victims from the humiliation of unwarranted public disclosure of their prior sexual activity. Budis, supra, at 506, 580 A.2d 283. Recognizing that such conduct is usually irrelevant in a rape or abuse case, the Legislature has barred its use unless it fits into one of two predetermined relevancy categories, namely "unless it is material to negating the element of force or coercion or to proving that the source of semen, pregnancy or disease is a person other than defendant" N.J.S.A. 2C:14-7(c). Sexual conduct is defined as "any conduct or behavior relating to sexual activities of the victim." Id. The statute expressly provides such conduct or behavior includes "previous ... experience of sexual penetration or sexual contact," placing prior sexual abuse squarely within its ambit.
If a defendant wishes to explore certain prior "sexual conduct" for any purpose
he must apply for an order of the court before the trial or preliminary hearing, except that the court may allow the motion to be made during trial if the court *251 determines that the evidence is newly discovered and could not have been obtained earlier through the exercise of due diligence. After the application is made, the court shall conduct a hearing in camera to determine the admissibility of the evidence. If the court finds that evidence offered by the defendant regarding the sexual conduct of the victim is relevant and that the probative value of the evidence offered is not outweighed by its collateral nature or by the probability that its admission will create undue prejudice, confusion of the issues, or unwarranted invasion of the privacy of the victim, the court shall enter an order setting forth with specificity what evidence may be introduced and the nature of the questions which shall be permitted, and the reasons why the court finds that such evidence satisfies the standards contained in this section. The defendant may then offer evidence under the order of the court. [N.J.S.A. 2C:14-7(a).]
The Legislature further has provided that in determining the admissibility of the evidence the judge must be guided by the scope of relevancy prescribed by paragraph (c). Budis, 243 N.J. Super. at 508, 580 A.2d 283.
In Budis, however, we recognized that prior sexual experience may in fact be relevant even if not encompassed by paragraph (c), in those situations in which neither the purpose nor effect of the evidence is to impugn the victim's moral character or reputation or to show the victim's inclination to consent. We there held that prior adjudicated sexual abuse of a child victim was admissible, despite the fact that it was not within the statutorily prescribed relevancy categories, because it tended to explain how a young child would have the sexual knowledge to initiate and describe sexual conduct. We did so based on the principle that the Rape Shield Law, like any other law which attempts to pre-judge relevancy and admissibility, must not be permitted to defeat defendant's sixth amendment right to confront the witnesses against him, and particularly, his right to a fair opportunity for cross-examination. Therefore, as we held in Budis, the Rape Shield Law must be construed as permitting "a fail-safe mechanism to allow the trial judge discretion to admit critical defense evidence which is not the subject of an exception." It otherwise runs the risk of conflicting with the defendant's constitutional right to a fair trial. 243 N.J. Super. at 509, 580 A.2d 283.
*252 The fail-safe mechanism is implemented by recognizing the judge's right to treat the listed exceptions of N.J.S.A. 2C:14-7(c) as illustrative rather than exhaustive. Cannel, Criminal Code Annotated, Comment 2, 4, N.J.S.A. 2C:14-7 (1991). It must, moreover, include a procedure by which the proffered evidence will be carefully examined for relevancy in order that a significant evidential basis for testing the bias or truth of the witness' testimony will not be excluded. To insure that the defendant's position is fully heard, the hearing mandated by N.J.S.A. 2C:14-7(a) should follow the prescriptions of Evid.R. 8. Cannel, supra, Comment 3.
We are satisfied that at the retrial, a Rule 8 hearing consistent with the principles we expressed in Budis should precede opening statements. Defendant at that hearing should first be accorded a full opportunity to explore the issue of the truth or falsity of the victim's allegations of prior abuse. If there were a judicial determination that these allegations were probably false, the incidents could no longer be characterized as sexual conduct, proof of which is barred by the Rape Shield Law. Rather, proof of the probably false allegations themselves would be admissible to impeach the victim's credibility. See, e.g., State v. Barber, 13 Kan. App.2d 224, 766 P.2d 1288 (1989). If on the other hand, the allegations were deemed to be probably true, they might be held to be admissible either, as in Budis, to offer an alternative source of sexual knowledge, or, depending on the circumstances surrounding the reporting of these incidents by the victim to her mother, to offer a motive for the child to have made a false accusation. See Commonwealth v. Joyce, 382 Mass. 222, 228, 415 N.E.2d 181, 186 (1981). The extent to which, if at all, any of these proofs are admissible, for what purpose and under what, if any, limitations, are matters to be determined by the trial judge following the Rule 8 hearing.
Defendant raises two other issues on appeal. He claims that there was a prejudicial discovery violation by the prosecutor and that the verdict was against the weight of the evidence. *253 During the trial, E.C. testified that defendant had "put his hands down her bra." Evidently the prosecutor knew that E.C. was going to make this statement but failed to so advise defense counsel. While we agree that the prosecutor did have the duty to disclose this statement in advance, we are also satisfied that its admission caused defendant no harm. The error was not prejudicial.
As to the claim that the verdict should be reversed because it is against the weight of the evidence, we note first that defendant failed to preserve this issue for appeal by timely motion for a new trial on these grounds. R. 2:10-1. He is therefore precluded from raising it now. State v. Allison, 208 N.J. Super. 9, 14, 504 A.2d 1184 (App.Div.), certif. denied, 102 N.J. 370, 508 A.2d 235 (1985); State v. Johnson, 203 N.J. Super. 127, 133, 495 A.2d 1367 (App.Div.), certif. denied, 102 N.J. 312, 508 A.2d 195 (1985). We are, moreover, satisfied that the claim is patently without merit. R. 2:11-3(e)(2).
The judgment of conviction is reversed and we remand for further proceedings consistent with this opinion.
NOTES
[1] Counsel failed to have opening statements transcribed although they were required to have been since an issue involving them was raised. See R. 2:5-3(b). Nevertheless the impact of the statements is made clear during the course of subsequent colloquy, which is reported.
[2] This report was not, as it should have been, included in the appendix of either party but its contents were made known during colloquy.