# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0119-18T4

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

D.D.,

     Defendant-Appellant.

_____

> Submitted January 27, 2020 – Decided May 1, 2020
>
> Before Judges Rothstadt and Moynihan.
>
> On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Docket No. 10-02-0218.
>
> Joseph E. Krakora, Public Defender, attorney for appellant (Steven M. Gilson, Designated Counsel, on the brief).
>
> Mark Musella, Bergen County Prosecutor, attorney for respondent (William P. Miller, Assistant Prosecutor, of counsel and on the brief; Catherine A. Foddai, Assistant Prosecutor, on the brief).

PER CURIAM

Defendant D.D. was charged in a three-count indictment with crimes relating to multiple sexual assaults of his daughter, N.D., including digital-vaginal penetration and digital-anal penetration that occurred between September 1, 2004 and January 14, 2008 when N.D.—born October 19, 2001—was between the ages of two and seven years-old.[1] Defendant was convicted by jury of two counts of first-degree aggravated sexual assault, N.J.S.A. 2C:14-2(a)(1) (counts one and two), and second-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(a) (count three).[2]

Defendant appeals from the denial of his post-conviction relief (PCR) petition following an evidentiary hearing that addressed only defendant's claim of jury impropriety, arguing:

> [POINT I]
>
> DEFENDANT'S CONVICTIONS MUST BE REVERSED BECAUSE TRIAL COUNSEL WAS INEFFECTIVE FOR NOT INFORMING THE COURT REGARDING JURORS' IMPROPRIETY.
>
> [POINT II]

---

[1] We use initials to protect the privacy of N.D. See N.J.S.A. 2A:82-46; R. 1:38-3(9), (12).

[2] We affirmed his conviction, State v. D.D., No. A-4236-12 (App. Div. Dec. 14, 2015), remanding only for consideration of defendant's ability to pay a penalty. The Supreme Court denied defendant's petition for certification. State v. D.D., 225 N.J. 339 (2016).

A-0119-18T4

BECAUSE DEFENDANT ESTABLISHED A PRIMA FACIE CASE OF TRIAL COUNSEL'S INEFFECTIVENESS, THIS MATTER MUST BE REMANDED FOR AN EVIDENTIARY HEARING REGARDING TRIAL COUNSEL'S FAILURE TO HAVE DEFENDANT'S BROTHER TESTIFY AS A WITNESS AND COUNSEL'S FAILURE TO PREPARE DEFENDANT TO TESTIFY.

A.      Trial Counsel Failed To Have Defendant's Brother Testify.

B.      Trial Counsel Failed To Prepare Defendant To Testify.

[POINT III]

THIS MATTER MUST BE REMANDED FOR FINDINGS OF FACT AND CONCLUSIONS OF LAW REGARDING DEFENDANT'S CLAIMS OF INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL PERTAINING TO THE DENIAL OF MISTRIAL MOTIONS, AND INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL'S FAILURE TO PROFFER EVIDENCE THAT DEFENDANT'S PREVIOUS INVOLVEMENT WITH THE DIVISION OF YOUTH AND FAMILY SERVICES PERTAINING TO THE ABUSE OF N.D. WAS DETERMINED TO BE "UNFOUNDED."

To establish a PCR claim of ineffective assistance of counsel, a defendant must satisfy the two-pronged test formulated in Strickland v. Washington, 466 U.S. 668, 687 (1984), and adopted by our Supreme Court in State v. Fritz, 105 N.J. 42, 58 (1987), first by showing "that counsel made errors so serious that

3                                                                      A-0119-18T4

counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment," Fritz, 105 N.J. at 52 (quoting Strickland, 466 U.S. at 687); then by proving he suffered prejudice due to counsel's deficient performance, Strickland, 466 U.S. at 687, 691-92. Defendant must show by a "reasonable probability" that the deficient performance affected the outcome. Fritz, 105 N.J. at 58. Under those standards, we find no merit in defendant's arguments and affirm.

## I.

Defendant claims his trial counsel was ineffective because he failed to inform the trial court of a conversation among three jurors on the second day of trial. The PCR court heard testimony from defendant's brother, T.M., and trial counsel at an evidentiary hearing.

T.M. testified that during a break in the trial, he overheard one juror tell two others, "you know, this guy is guilty," and that all three agreed. He also said one of the three referred to defendant as a "drunk." T.M. claimed he told defense counsel of the incident, and that counsel responded that "it had no bearing[] on what was going on."

T.M. described the three male jurors as white. He testified: "Two of them were very young[,] . . . in their mid[-twenties], I would say. The other gentleman

was, I would say, in his early[-forties]."  The two younger men were the same height and "a little thinner" than T.M.  The older man "was about maybe five-nine, salt and pepper hair, glasses."  He also recalled that all three had been seated in the front row of the jury box.

Although he admitted having "general discussions" with T.M. about defendant's background, trial counsel denied that T.M. told him of the three jurors' conversation.  He testified if he had been told of that conversation, he would have notified the trial judge just as he did when defendant advised him that a juror had seen defendant being transported from the county jail to the courthouse.

Defendant argues the PCR court erred in rejecting his assertion that trial counsel's credibility was impugned by his inability to recall details about the trial and that T.M.'s detailed recollection was "very, very credible."  "Our standard of review is necessarily deferential" to the factual findings of a PCR court so long as the findings "are supported by sufficient credible evidence in the record."  State v. Nash, 212 N.J. 518, 540 (2013).  "Those findings warrant particular deference when they are 'substantially influenced by [the court's] opportunity to hear and see the witnesses and to have the "feel" of the case,

5

which a reviewing court cannot enjoy.'" State v. Rockford, 213 N.J. 424, 440 (2013) (quoting State v. Robinson, 200 N.J. 1, 15 (2009)).

The PCR court recounted both witnesses' testimony and found trial counsel to be credible, highlighting his action in bringing the juror issue that defendant disclosed to him to the trial court's attention. He found T.M.'s testimony "less credible," noting the State's observation that "defendant's drinking habits" were not mentioned during the first two days of trial. Given our deference to those credibility findings which are supported by the evidentiary-hearing record, defendant failed to establish the first Strickland-Fritz prong.

## II.

Defendant argues the PCR court erred by denying an evidentiary hearing because he established a prima facie case that trial counsel was ineffective by failing to call T.M. as a trial witness and by failing to prepare defendant to testify at trial. As the PCR court's evidentiary hearing did not address this issue, we review both the factual inferences drawn by the PCR court from the record and the court's legal conclusions de novo. State v. Blake, 444 N.J. Super. 285, 294 (App. Div. 2016).

6

Defendant first avers T.M. asked trial counsel if he could testify at trial on defendant's behalf because he "had information impugning the credibility of N.D.'s mother and N.D.'s babysitter . . . both of whom implicated defendant in the sexual abuse of N.D." He claims trial counsel's declination of that offer was ineffective.

In his merits brief, defendant cites to portions of his certification as supporting his argument, claiming T.M. "would have been able to bolster [defendant's] contention, and insistence, that [he is] innocent. [T.M.] would have also undermined the credibility of [defendant's] accuser(s)," and that he told trial counsel he wanted T.M. to testify "because [he] believed that [T.M.] would have been able to establish [his] innocence. . . . [and] could have also been a good character witness."

The PCR court considered an "investigation report" that T.M. signed[3] and concluded trial counsel's "strategy is not an argument for ineffective assistance of counsel"; and that it would "not . . . rule on trial counsel's trial strategy as to

_____

[3] The PCR court referred to the document as a "certification." Although the proper language for a certification in lieu of oath, in compliance with Rule 1:4-4(b), appeared above T.M.'s signature, the investigator's report was not T.M.'s statement.

its effectiveness." The PCR court determined the information in T.M's certification was "obtain[ed] through . . . defendant himself and [about] which . . . defendant could have testified to at trial."

Our de novo review of the "certification" leads us to conclude that defendant did not establish a prima facie case of ineffective assistance of trial counsel. T.M.'s "evidence" that allegedly impugned N.D.'s mother's credibility consisted of hearsay information from "a friend named George" about an affair N.D.'s mother was having and T.M.'s single observation of N.D.'s mother going into the home of the man with whom she was having the alleged affair. The report continues: "[T.M.] thinks that [N.D.'s mother] set up [defendant] when she began the affair and that she wanted his pension." It also reads: "[T.M.] thinks she is a scam artist and was using [defendant] because he made $60,000 a year. She wanted to become a legal citizen and after she did she was trying to get [defendant] out of the picture."

The report does not establish the basis for any of T.M.'s "thoughts." Moreover, N.D.'s mother did not testify at trial. The information T.M. had, even if it was first-hand, was of no use to impeach someone who did not testify.

The report also provides that T.M. told the investigator "the babysitter, who twice accused [defendant] of molesting [N.D.,] was illegal and had tried to

extort $10,000 from [defendant] before reporting to police that she believed he was molesting [N.D.  Defendant] refused to pay her."  As the PCR court noted, unless T.M. witnessed the alleged extortion—and the record is barren of evidence that he did—the information was hearsay known to defendant alone. And, as the investigation report concedes, the "babysitter was found to be lying [three] or [four] times under" trial counsel's cross-examination.

We also see little merit to defendant's contention that T.M., as a character witness, could have testified that defendant "had been around his children and other children and never had a problem."  Defendant does not establish that those specific instances of conduct were admissible character evidence.  See State v. Mondrosch, 108 N.J. Super. 1, 4-5 (App. Div. 1969); N.J.R.E. 405(a); N.J.R.E. 608(a).

In similar circumstances, when a defendant avers his trial counsel should have called witnesses, we would normally expect a PCR court to consider "(1) the credibility of all witnesses, including the likely impeachment of the uncalled defense witnesses; (2) the interplay of the uncalled witnesses with the actual defense witnesses called; and (3) the strength of the evidence actually presented by the prosecution."  State v. L.A., 433 N.J. Super. 1, 16-17 (App. Div. 2013) (quoting McCauley-Bey v. Delo, 97 F.3d 1104, 1106 (8th Cir. 1996)).  Here,

however, defendant's proffered evidence does not establish a prima facie claim that trial counsel was ineffective if he did decline to call T.M. as a witness. As such, the PCR court did not err in denying an evidentiary hearing. R. 3:22-10(b); State v. Preciose, 129 N.J. 451, 462-63 (1992).

Likewise, defendant failed to establish a prima facie claim that trial counsel failed to prepare him to testify at trial, which he did against trial counsel's advice. His claims that trial counsel failed to "discuss the State's witnesses or what evidence would be brought out on direct examination during the State's case," or how the State's witnesses would be cross-examined, even if true, had no bearing on his testimony. The State's witnesses had been presented before defendant testified and he well knew what they said. He also knew that N.D.'s mother was not going to testify. Moreover, his claims of ineffective preparation are devoid of any details as to what trial counsel failed to review; he makes only bald assertions. See State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999) ("[I]n order to establish a prima facie claim, a petitioner must do more than make bald assertions that he was denied the effective assistance of counsel.").

We further note defendant's claims are belied by the record. The trial court had a frank discussion with defendant about testifying. Defendant made

clear that he had long planned to testify and he was doing so voluntarily. The court fully explained that defendant would be subject to cross-examination by the assistant prosecutor. The trial court asked defendant if he was going to testify "even after you spoke to [trial counsel], your attorney, you still want to do that[?]" Defendant answered affirmatively. He was sufficiently comfortable telling the trial court that he was not ready to testify that day because he heard for the first time that N.D.'s mother was not testifying; but at no time did defendant indicate that counsel had failed to communicate with him or prepare him for trial testimony. Defendant did not have to testify that day; other testimony was taken and counsel argued several matters.

We also note defendant acquitted himself adequately on the stand. He explained why he previously admitted to police that he may have touched N.D. inappropriately, stating that he "was pretty buzzed, stoned" during the police interview, and that he never touched N.D. sexually. He testified that he touched N.D. during play and further countered the State's allegations by recounting instances when he had to tend to N.D.'s private parts when changing or cleaning her. He also offered reasons why false allegations were made. A review of defendant's testimony does not support his contention that he was "frightened

and nervous and . . . did not know what to expect." The evidentiary hearing was properly denied.

## III.

We agree with defendant's contention that the PCR court made no findings of fact or conclusions of law regarding his argument that trial counsel failed to utilize records of the Division of Youth and Family Services (DYFS) showing that previous incidents of N.D.'s abuse were unfounded "to cross-examine the victim and the victim's mother." The court was required to address all arguments, and its failure to do so contravened Rule 3:22-11 which provides: "In making [a] final determination upon a [PCR] petition, the court shall state separately its findings of fact and conclusions of law[.]"

We decline to remand this matter because the DYFS records concerned allegations of neglect and physical abuse in 2007 that predated the sexual abuse alleged in the indictment. We see no basis for the admission of those records which document DYFS's findings that the allegations were unfounded because N.D., who DYFS noted was "delayed," was not able to tell the DYFS worker on either occasion how she received the marks on her body that precipitated the investigations. Given the standard used by DYFS for its findings, see N.J.A.C. 3A:10-7.3; N.J. Div. of Child Prot. & Permanency v. V.E., 448 N.J. Super. 374,

388-89 (App. Div. 2017) (noting that an allegation of physical abuse is only considered "substantiated" or "established" if a preponderance of the evidence demonstrates that the child was subjected to death, serious bodily injury or other repeated instances of abuse as defined in N.J.S.A. 9:6-8.21) and the reason for those findings, the report—a hearsay document—was not relevant to N.D.'s credibility. Nor was it relevant to her mother's credibility; and, as noted, her mother did not testify.

IV.

The PCR court also made no findings of fact and conclusions of law regarding defendant's argument that appellate counsel was ineffective for failing to raise on appeal the assistant prosecutor's improper cross-examination of defendant about N.D.'s credibility. Despite the PCR court's lapse, we decline to remand this issue because the trial court sustained trial counsel's objections and explicitly instructed the jury, effectively curing any prejudice that stemmed from the improper cross-examination.

The assistant prosecutor asked defendant if it was correct that N.D. would have no reason to make up the allegations. The trial court sustained trial counsel's immediate objection, prior to defendant's answer. Following a sidebar conference, the trial court instructed the jury:

The last question by the [p]rosecutor, folks, is to be completely discounted by you. One witness cannot vouch for the credibility of somebody else nor can the [p]rosecutor, very frankly, and it's up to you to decide what the credibility is in this case of any witnesses that have testified. So bear that in mid. The last question posed by the [p]rosecutor is objected to. The objection is sustained, and you're to discount it. Okay? Understand that? Good.

The assistant prosecutor subsequently asked defendant if he wanted the jury "to believe that from a slight touch of your finger, your daughter told the police that you digitally penetrated her. Isn't that correct?" Again, the judge sustained trial counsel's immediate objection before defendant answered. And, when the assistant prosecutor asked defendant if it was correct that during her trial testimony, N.D. "said, you stuck your finger in her anus," the judge again sustained trial counsel's objection before defendant answered.

As trial counsel argued at sidebar, the assistant prosecutor was not permitted to ask one witness to assess another witness's credibility. State v. Bunch, 180 N.J. 534, 549 (2004); State v. Frisby, 174 N.J. 583, 594 (2002). Inasmuch as defendant did not answer the first set of questions,[4] and the trial court gave a curative instruction, which was repeated during defendant's cross-

---

[4] Defendant answered, "[n]o," when the assistant prosecutor asked defendant if he saw N.D. on video and on the witness stand indicate that he inserted his finger in her vagina. The judge's second instruction followed those questions.

examination and the final jury charge—instructions the jury is presumed to have followed, State v. Burns, 192 N.J. 312, 335 (2007)—we do not determine the improper questioning led "to a verdict that could not otherwise be justly reached," see State v. Winter, 96 N.J. 640, 647 (1984). We thus see no merit in defendant's argument that appellate counsel was ineffective for failing to raise it.

V.

We determine defendant's remaining arguments are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2). We add only that, although not addressed by the PCR court, his claim that appellate counsel was ineffective for failing to argue that the assistant prosecutor "was erroneously permitted to elicit from [a medical doctor inadmissible hearsay] that N.D. told her defendant had touched her genitalia and her anus with his finger," is meritless. We addressed the hearsay claim on direct appeal. We agreed with defendant's argument that the statement was inadmissible as a hearsay exception under N.J.R.E. 803(c)(4) as a statement made for purposes of medical diagnosis or treatment, but concluded its admission was harmless error because it "did not provide the jury with new information it would have otherwise not been able to consider."

A-0119-18T4

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0119-18T4