**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3068-17T4

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

GIRISH MENON,

     Defendant-Appellant.

_____

Argued May 8, 2019 – Decided June 4, 2019

Before Judges Alvarez and Mawla.

On appeal from Superior Court of New Jersey, Law Division, Burlington County, Indictment No. 16-09-0905.

Robin Kay Lord argued the cause for appellant.

Jennifer Bentzel Paszkiewicz, Assistant Prosecutor, argued the cause for respondent (Scott A. Coffina, Burlington County Prosecutor, attorney; Nicole Handy, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

After a bench trial, defendant Girish Menon was convicted of first-degree robbery, N.J.S.A. 2C:15-1(a)(1).[1]  On January 26, 2018, defendant was sentenced as a second-degree offender to five years imprisonment, subject to eighty-five percent parole ineligibility pursuant to the No Early Release Act. See N.J.S.A. 2C:43-7.2 and N.J.S.A. 2C:44-1(f)(2).  He appeals and we affirm.

The following facts and circumstances are derived from the record.  A person driving a dark Lexus sedan displayed a gun to a gas station attendant at a Wawa store in Maple Shade, demanding all the money in the register.  The attendant described the person, later identified as defendant, as Hispanic or lighter skinned African American, with some facial hair, and wearing a baseball cap.

The attendant acknowledged during defendant's trial that it was difficult to determine the assailant's ethnicity.  During the sentence, family members

---

[1] Defendant was also convicted of second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a)(1), and third-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b)(2).  At sentencing, the State requested the dismissal of those counts because of "operability issues."  A fourth count charging him with fourth-degree aggravated assault, N.J.S.A. 2C:12-1(b)(4) was dismissed prior to trial.  The day of sentence, the State also indicated that a pending indictment for driving while suspended would be dismissed in light of defendant's term of imprisonment.

A-3068-17T4

discussed the fact defendant had been brought to this country from India at age four.

The robbery occurred in a well-lit area. Because the robber did not leave the vehicle, the attendant did not observe him head-on, and was not "real face-to-face."

When the attendant explained he could not access the money in the register because it was a drop safe, accessible only to security, the assailant drove away. The attendant attempted to write down the license plate number, but only recalled the letters "GVN" because the plate was obstructed by plastic. Defendant was the primary driver of a brown Lexus sedan, bearing license plate number V31-GBN.

The surveillance footage of the incident showed a dark Lexus sedan, but did not display the number on the vehicle's license plate or the driver's features. During a photo array at the police station, the attendant asked to see two photographs a second time. After the array was reshuffled, he identified defendant's photograph, stating he was eighty percent certain the man in the photo was the robber. Defendant was then in the custody of another police department, and was interviewed after the administration of Miranda[2] warnings.

---

[2] Miranda v. Arizona, 384 U.S. 436 (1966).

A-3068-17T4

At trial, the attendant identified defendant, explaining that he considered eighty percent certainty to be quite high, and only reduced it from complete certainty because he was so conscious of the importance of the identification.

When defendant's vehicle was searched pursuant to a warrant, an "airsoft" handgun only capable of discharging plastic pellets was recovered hidden under a fabric liner in the trunk. The officer who recovered the weapon stated that the handgun had been modified, by removing the orange tip on the barrel, to look like an actual firearm.

At trial, defendant called an alibi witness who testified that on the night of the crime, she and defendant were at her home watching two televised basketball games. She denied any romantic attachment to defendant, claiming they were just friends who regularly watched sports games together. After the games, defendant spent the evening, and the alibi witness drove him home the following morning. When asked if she knew anything about defendant's airsoft gun, she responded that defendant put his airsoft handgun in his trunk after the Mount Laurel police told him to keep it there. The alibi witness also said that she never saw defendant wearing a baseball cap.

A-3068-17T4

The judge found the police officers who testified to be credible. He noted that the attendant saw defendant during the course of the pretrial Wade[3] hearing, thus he did not put "much weight on the in-court identification[.]" The attendant also displayed "some hesitancy" when he identified defendant from the photo array, based on his review of the identification video. He further noted that despite being asked on cross-examination about his identification being made with eighty percent certainty, the attendant was confident and considered it to be "a high number."

The judge relied on the additional evidence, such as that defendant drove a car similar in appearance to that described by the attendant, finding the difference between a dark brown Lexus and a black Lexus minimal. He said: "The other evidence is that [the victim] said he got a partial plate that was GBN. Mr. Menon has a Lexus, dark-colored, with partial plates GBN. So that is something I do put a substantial amount of weight on."

The judge added the assailant's ethnic background was not as important as the attendant's description, including "a five o'clock shadow." Defendant's skin tone was similar to that described by the attendant, and the video taken of his

---

[3] United States v. Wade, 388 U.S. 218 (1967).

A-3068-17T4

statement after arrest showed him with a five o'clock shadow.  The judge considered the similarity in appearance to be "significant as well."

The judge also found "significant" the fact that a gun was found hidden in the trunk of defendant's vehicle.  He described the location of the gun as being "concealed underneath the . . . manufacturer's carpet.  So the weapon was concealed and it was concealed in such a manner to hide it from detection."  The judge did not find credible the alibi witness's testimony that defendant placed the gun in his trunk on the advice of the local police department.   He also observed that the gun was accessible from the inside interior of the back seat of the vehicle.  Thus he placed "a lot of weight on" the fact that the gun was found in the Lexus, and the manner in which it was hidden.

On appeal, defendant raises the following points:

> POINT I
> THE TRIAL JUDGE'S FINDING OF GUILT WAS NOT BASED ON SUFFICIENT CREDIBLE EVIDENCE IN THE RECORD.
>
> POINT II
> DEFENDANT'S CONVICTION MUST BE REVERSED BECAUSE THERE WAS NOT SUFFICIENT CREDIBLE EVIDENCE IN THE RECORD TO SUPPORT THE TRIAL JUDGE'S FINDING OF GUILT.

6

Defendant's second point in the body of the brief, as opposed to the table of contents, is framed as follows:

> DEFENDANT'S CONVICTION MUST BE REVERSED BECAUSE THE STATE FAILED TO PROVE IDENTITY BEYOND A REASONABLE DOUBT.

## I.

We review a bench trial by looking for "sufficient credible evidence in the record to support the judge's determination." State ex rel. R.V., 280 N.J. Super. 118, 121 (App. Div. 1995). This standard of review requires the judge to "find the facts and state its conclusions of law thereon in all actions tried without a jury" and ultimately, "enter or direct the entry of the appropriate judgment." R. 1:7-4(a).

Moreover, a trial court sitting without a jury must "state clearly its factual findings and correlate them with the relevant legal conclusions." State v. Locurto, 157 N.J. 463, 470 (1999) (quoting Curtis v. Finneran, 83 N.J. 563, 570 (1980)). "When the reviewing court is satisfied that the findings and result meet this criterion, its task is complete and it should not disturb the result, even though it has the feeling it might have reached a different conclusion were it the trial tribunal." Id. at 471 (quoting State v. Johnson, 42 N.J. 146, 162 (1964)). The reviewing court should only reverse, if it determines that the trial court's

findings and legal conclusions were "so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice[.]" Rova Farms Resort, Inc. v. Inv'rs Ins. Co., 65 N.J. 474, 484 (1974).

Defendant contends that the judge simply did not have sufficient credible evidence in the record for conviction because the attendant mistook the letters on the suspect's license plate. The judge said the attendant observed the letters "GBN," when he actually told police it read "GVN." Despite the confusion,[4] the license plate the attendant recorded was substantially similar to defendant's plate. More significantly, the description of the vehicle and the dark color was accurate.

The judge placed little weight on the attendant's in-court identification, but great weight on his initial description of the assailant, which matched defendant's appearance at the time of arrest. The judge placed the greatest weight on the fact, and manner in which, the modified airsoft gun was hidden in the trunk of the car. The placement of the gun in the car indicated the owner intended to hide it from view completely.

---

[4] The difference in sound between "V" and "B" is not so great. It is possible that the judge's seeming confusion was an error by the transcriber.

If the trial court misspoke, assuming that is what occurred, by saying GBN instead of GVN, it does not nullify the judge's entire analysis on the evidence. Defendant operated a dark Lexus, his appearance matched the description of the assailant, and hidden in the trunk of the Lexus beneath the manufacturer's lining, police found an airsoft gun modified to look like a real handgun.

An appellate court will typically "give deference to the trial court that heard the witnesses, sifted the competing evidence, and made reasoned conclusions." Griepenburg v. Twp. of Ocean, 220 N.J. 239, 254 (2015). Here, the court did not err in rendering a verdict, after making credibility findings, which placed significance on certain facts over others. An appellate court should not disturb a trial court decision that "state[s] clearly its factual findings and correlate[s] them with the relevant legal conclusions" even if "it might have reached a different conclusion were it the trial tribunal." Locurto, 157 N.J. at 470, 471. A finding of guilt in light of the facts as found by the trial judge does not offend the interests of justice.

## II.

Defendant also contends that the State's identification evidence was insufficient for a finding of guilt because the State failed to prove identity beyond a reasonable doubt, and the identification was too unreliable and

unpersuasive to support the trial court's determination.  As we have already said, however, the judge did not place great weight on the attendant's identification of defendant in court.  He did, however, rely on the attendant's identification of defendant and description of his appearance when arrested.  Although it is true that defendant is neither Hispanic nor a light-skinned African American, his skin tone and facial hair was accurately described by the eyewitness.  The eyewitness also identified the color of defendant's car and a partial license plate.

The judge did place a reasonable amount of weight on the attendant's selection of defendant's photograph from the array, which was conducted in a manner he found in compliance with the attorney general guidelines and the requirements of State v. Henderson, 208 N.J. 208 (2011).  Therefore, the judge's decision that the State had proven defendant guilty beyond a reasonable doubt of the robbery was supported by sufficient credible evidence in the record, including a sufficiently reliable eyewitness identification.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3068-17T4